ALICE DRAKE *vs.* MARIA T. ELLIOT & others.

Suffolk.　March 12, 1908. — June 16, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Equity Jurisdiction*, Fraud. *Insurance*, Life.

In a suit in equity by the daughter of a man, who had died leaving life insurance under a policy which originally had been payable to the plaintiff as beneficiary, against the executor of the will of the widow of the insured, alleging that the defendant's testatrix had falsely represented to the plaintiff's father that she was an unmarried woman and thereby had induced him to marry her and to make the policy of insurance payable to her instead of to the plaintiff, the judge who heard the case ordered that the bill be dismissed, and, the case coming before this court on appeal without any ruling of law or findings of facts having been asked for, it was *held*, that, as the facts disclosed by the record warranted a finding by the judge that there was no fraud on the part of the defendant's testatrix, it was unnecessary to consider whether, if the substitution had been brought about, as alleged, by fraud on the part of the defendant's testatrix, the plaintiff would have had any such vested right as beneficiary under the policy as to entitle her to maintain the bill.

MORTON, J. This is an appeal by the plaintiff from a decree by a judge of the Superior Court dismissing her bill with costs. The evidence was taken by a commissioner and is all before us.

No rulings of law or findings of facts were asked for, and the decree must stand unless clearly erroneous.

The bill alleges in substance that the plaintiff is the daughter of one Charles G. McKenzie who died in November, 1893; that at the time of his death McKenzie held a policy of insurance on his life for the sum of $2,000, issued by the Grand Lodge of the Ancient Order of United Workmen, which had formerly been made payable to the plaintiff; that defendant's testatrix falsely and fraudulently represented to McKenzie that she was an unmarried woman and thereby induced him to marry her and to make the policy of insurance payable to her instead of the plaintiff; that at his death the insurance money was paid to her by the lodge and at her death passed under her will as a part of her estate to the defendant; and that the facts as to the fraudulent representations to McKenzie by the defendant's testatrix came only recently to the knowledge of the plaintiff. The prayer of the bill is that the defendant may be ordered to pay to the plaintiff the sum so received with interest.

It is to be noted that the essential allegations of the bill are those which relate to the alleged fraud on the part of defendant's testatrix. The burden was on the plaintiff to establish them by a fair preponderance of the evidence. To sustain these allegations she relied on evidence introduced by her and tending, as she contended, to show that at the time of the marriage of defendant's testatrix to McKenzie she had a former husband by the name of Finnegan living. This evidence consisted largely, if not wholly, of the deposition of one James Finnegan taken in Montreal in which he deposed to a former marriage between himself and the testatrix which was still in force. But there was evidence tending to show that if there was such a marriage, the testatrix at the time of her marriage to McKenzie had not heard from Finnegan for many years, and that she had been told that he was dead. This and other evidence in the case warranted a finding, if believed, that she contracted the marriage with McKenzie in good faith, and that the substitution of her name as beneficiary for that of the plaintiff was not procured by fraud on her part. Further, if the presiding judge who heard the case found as a fact, as for aught that appears he did, that, upon all of the evidence and the inferences fairly to be drawn

from it, he was not satisfied that there had been a marriage to Finnegan, or that, if there had been, the Finnegan who deposed was the man, and was, therefore, unable to find that the testatrix had a former husband living at the time of her marriage to McKenzie, we do not think that such a finding could be held to have been plainly erroneous. Moreover, it appeared that the marriage took place in 1890, but the change in the beneficiary was not made till April, 1893. There was evidence tending to show that the plaintiff lived in her father's family for about a year after the marriage and then owing to some disagreement went to live with an uncle, her father's brother. There also was evidence tending to show that the uncle had caused the plaintiff's father to be turned out of a house which he had conveyed to the uncle's wife under such circumstances that he thought that, in equity and good conscience, he still owned it and that this had given rise to ill feeling. This evidence if believed would furnish, or could be found to furnish, a satisfactory reason for the substitution and to disprove fraud on the part of the defendant's testatrix. It would also warrant a finding that the revocation was intended to be an absolute one irrespective of the validity of the substitution.

We do not find it necessary to consider whether if the substitution had been brought about as alleged by fraud on the part of defendant's testatrix the plaintiff would have any such vested right as to enable her to maintain this bill, nor to consider the question of laches. On the whole case we are of opinion that the decree should be affirmed.

*So ordered.*

*J. J. Feely,* (*R. Clapp* with him,) for the plaintiff.
*W. D. Turner,* (*S. S. Fitz Gerald* with him,) for the defendants.